IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

SHANNA BRANDON,

    Petitioner,

v.    Case No. 1:20-cv-00789

WARDEN CARVER,
FPC Alderson,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1).[1] Petitioner paid the applicable $5.00 filing fee. This matter is assigned to the Honorable David A. Faber, Senior United States District Judge, and it has been referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, who is presently incarcerated at the Federal Prison Camp at Alderson, West Virginia ("FPC Alderson"), is currently serving an 84-month term of imprisonment, followed by a five-year term of supervised release, after her conviction in the United States District Court for the Western District of North Carolina on one count of conspiracy to distribute and possess with intent to distribute in excess of 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Judgment, *United*

---

[1] Petitioner's other pending motions will be addressed in a separate order.

*States v. Brandon*, No. 3:16-cr-00100-MOC-DSC, ECF No. 84 (W.D.N.C. Dec. 5, 2016). Her current release date is February 21, 2022.

On December 7, 2020, Petitioner filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking earned time credits pursuant to the First Step Act of 2018 ("FSA"), 18 U.S.C. § 3632(d)(4)(A). (ECF No. 1). On May 5, 2021, as ordered by the court, Respondent filed a Response to the Petition asserting that Petitioner did not properly exhaust her administrative remedies and that the petition is premature. (ECF No. 14). On June 14, 2021, Petitioner filed a Reply (ECF No. 15). This matter is ripe for adjudication.

## ANALYSIS

### A.  Exhaustion of administrative remedies.

Generally, a federal inmate must exhaust available administrative remedies before filing a writ of habeas corpus in federal court. *Boumediene v. Bush*, 553 U.S. 723, 782 (2008); *Braden v. 30th Judicial Cir. Ct.*, 410 U.S. 484, 490–91 (1973) (requiring exhaustion in a § 2241 matter); *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (an inmate must exhaust administrative remedies before filing a § 2241 petition). Although § 2241 does not contain a statutory exhaustion requirement, courts have consistently required prisoners to exhaust their administrative remedies, absent futility thereof, before seeking habeas review under § 2241. *See, e.g., Timms v. Johns*, 627 F.3d 525, 530-33 (4th Cir. 2010) (requiring exhaustion in a § 2241 matter); *McClung*, 90 F. App'x at 445 ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.").

Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being hauled into court. *Arbaugh v. Berkebile*, No. 5:10-cv-528, 2010 WL 5481198, at *3 (S.D.W. Va. Nov. 8, 2010), *report and recommendation adopted*, No. 5:10-cv-00528, 2011 WL 9387 (S.D.W. Va. Jan. 3, 2011) (citing *Jones v. Bock*, 549 U.S. 199, 204, (2007); *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992)). Because the statute authorizing habeas corpus matters does not expressly require administrative exhaustion, the court retains discretion to disregard the exhaustion requirement in "pressing circumstances." *Reeder v. Phillips*, No. 1:07-cv-138, 2018 WL 243003, at *3 (N.D.W. Va. June 12, 2008). However, exhaustion should only be excused where administrative review would be futile. *Jaworski v. Gutierrez*, 509 F. Supp. 2d 573 (N.D.W. Va. 2007). Thus, "as a general rule, courts will deny judicial relief until all administrative remedies have been exhausted[,] and exhaustion will not be considered futile, "[u]nless the agency is certain to rule adversely." *Reeder,* 2008 WL 2434003 at *2-3.

The BOP has a four-step Administrative Remedy Program for resolving grievances: (1) seeking informal resolution with a staff member; (2) submitting a formal grievance to the Warden on a "BP-9" form; (3) appealing the formal grievance to the Regional Director on a "BP-10" form within 20 days of the date the Warden signed the response to the grievance; and (4) appealing to the General Counsel of the Central Office on a "BP-11" form within 30 days of the date the Regional Director signed the response to the appeal. *See* 28 C.F.R. § 542.10-542.15; *Luczak v. Coakley*, No. 5:16-cv-189, 2018 WL 4326877, at *6 (N.D.W. Va. Aug. 3, 2018), *report and recommendation adopted*, No. 5:16-cv-189, 2018 WL 4305810 (N.D.W. Va. Sept. 10, 2018).

Petitioner's Reply essentially claims that she was denied the ability to exhaust her administrative remedies because she did not receive a response to her BP-10 remedy request until nine months after she submitted it. Thus, she claims that she was "held [] at the Regional level" and proceeded to file the instant petition allegedly prior to receiving that response to avoid suffering undue prejudice.[2] (ECF No. 15 at 1). She further contends that, at that point, "any further administrative remedy was not needed" and filing a BP-11 would have been futile. Therefore, she maintains that she exhausted all remedies that were available to her. (*Id.*, citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)). (*Id.* at 1).[3]

However, according to the administrative remedy documentation provided by Respondent, Petitioner's BP-10 administrative remedy was received on March 20, 2020, and a response was due by May 19, 2020. Petitioner has not provided any evidence to support her contention that she did not receive the response until December 31, 2020. Moreover, pursuant to 28 C.F.R. § 542.18, Petitioner could have deemed the BP-10 denied as of May 19, 2020, if she did not receive a response by that time, and then she could have timely filed her BP-11 to the Central Office. Therefore, there is insufficient support for her claim that the administrative remedy process was unavailable or futile, and there is no basis to waive or excuse the exhaustion requirement.

Petitioner admittedly filed the instant petition prior to exhausting the final level of the BOP administrative remedy process. Thus, she clearly had not exhausted the

---

[2] Petitioner contends that proper application of the earned time credits she seeks would have entitled her to release in February of 2021. Thus, she contends that full exhaustion of the administrative remedy process would have caused undue delay.
[3] Petitioner filed a separate Motion to Waive Exhaustion Requirement (ECF No. 4) making similar arguments. As noted above, this motion will be denied by a separate order.

available administrative remedies concerning her claims when she filed the instant petition, and she has not demonstrated any facts supporting a finding that such administrative remedy process was futile. Therefore, dismissal of her § 2241 petition for failure to properly exhaust administrative remedies is warranted. *See Jackson v. Saad*, No. 1:18-cv-01022, 2019 WL 321411, *1 (S.D.W. Va. Jan. 24, 2019) (Faber, S.J.) ("administrative remedies are to be exhausted <u>prior</u> to filing suit."). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's § 2241 petition should be dismissed because she failed to properly exhaust the available administrative remedies prior to filing her petition and has not demonstrated that such administrative remedies were futile.

      **B.**     **Petitioner has not demonstrated a present right to habeas relief.**

As noted by Respondent, the First Step Act of 2018 ("FSA"), signed into law on December 21, 2018, includes a provision for evidence-based recidivism reduction program incentives and productive activities rewards. *See* Pub. L. 115-391, 132 Stat. 5194 (2018); *see also* 18 U.S.C. § 3632(d). Through this program, prisoners may earn various incentives and rewards, including the awarding of time credits, for their participation in and completion of certain programs and productive activities that are assigned to them by Bureau of Prisons ("BOP") staff. *See* 18 U.S.C. §§ 3632(b), (d).

As part of the FSA, and as set forth in 18 U.S.C. § 3621(h), the BOP was required to create a new risk and needs assessment system to determine the recidivism risk of each prisoner by January 15, 2020, begin implementing the system on that date, and have full implementation completed by January 15, 2022. *See Saleh v. Young*, No. 5:19-cv-00468, 2021 WL 1758711 (S.D.W. Va. May 4, 2021). Thereafter, prisoners who

successfully complete evidence-based recidivism reduction programming or productive activities "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A).   Additionally, a prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."   18 U.S.C. § 3632(d)(4)(A)(ii).

Thus, as noted by the District Court in *Saleh*, the BOP has until January 15, 2022 to provide evidence-based recidivism reduction programs and productive activities for all prisoners and, only at that time, will it be <u>required</u> to award such time credits to eligible prisoners.   2021 WL 1758711 at *1 (citing *Hand v. Barr*, No. 1:20-cv-00348-SAB-HC, 2021 WL 392445, * 5 (E.D. Cal. Feb. 4, 2021).   As further noted by the *Saleh* court, the FSA provides that a "prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of the enactment of this subchapter" (January 15, 2020). 18 U.S.C. § 3632(d)(4)(B).   *Id.*

Respondent asserts that the authority of the BOP to award such time credits, prior to January 15, 2022, is clearly discretionary and, thus, it has no obligation to award such time credits to those who successfully complete the assigned programs and activities prior to that date.   Respondent further contends that, to date, the BOP has not exercised its discretion to earlier award such time credits.   (*Id.* at 7) (collecting cases).   Respondent recognizes that a court in the District of New Jersey did grant a habeas corpus petition seeking earned time credits under these provisions for an inmate whose release date

6

preceded the effective date of the FSA amendment, citing "unfairness" to inmates who could not benefit from such programming. *See Goodman v. Ortiz*, No. 20-cv-7582, 2020 WL 5015613, at *1 (D.N.J. Aug. 25, 2020). Nonetheless, Respondent contends that such "potential unfairness [] does not provide courts a license to pervert the clear language of the FSA that allows the BOP to delay fully implementing the time credit provisions until January 15, 2022, should the BOP choose to do so." (ECF No. 14 at 8-9). Therefore, Respondent asserts that this court should follow the sound reasoning of *Saleh*, where the court dismissed the petition as premature. (*Id.* at 9 n.6).

Petitioner's Reply suggests that the delay in awarding earned time credits to those who completed eligible programming prior to January 15, 2022 is an "absurd result" that frustrates Congressional intent, and that the statute should be liberally construed to carry out Congress's intent and presently award the earned time credits. (*Id.* at 1-2). Accordingly, Petitioner contends that, with 15 days of credit earned for every 30 days of productive activities completed at the time she filed her Reply, she is entitled to 12 months of earned time credit, and with only six months remaining on her sentence, she contends that she is entitled to immediate release. (*Id.* at 2-3).

Respondent acknowledges that Petitioner is now eligible to earn FSA time credits, that she is currently classified as a low risk for recidivism, and that her needs have been assessed several times. (ECF No. 14 at 5 n.3 and Ex. 1 Attach. D, FSA Profile, and Attach. E, Inmate Education Data Transcript). Nonetheless, because the authority of the BOP to award such incentive-based time credits prior to January 15, 2022 is entirely discretionary, there is no basis for this court to require the BOP to award such time credits to Petitioner and, thus, no basis for the court to grant habeas corpus relief requiring her

7

earlier release from custody.  *See Jones v. Phelps*, No. 1:21-cv-418-JFA-SVH, 2021 WL 3668885, at *8 (D.S.C. June 16, 2021), *report and recommendation adopted*, 2021 WL 3667396 (D.S.C. Aug. 17, 2021) ("The relevant statutes, as well as the heavy weight of authority, do not show that the BOP is obligated to apply Petitioner's earned time credits prior to January 15, 2022 . . . the court has no discretion to disregard the plain language of the relevant statutes."); *Knight v. Bell,* No. 20-cv-3108-JKB, 2021 WL 1753791, at *3 (D. Md. May 4, 2021) (BOP inmates seeking earned time credits under FSA cannot obtain habeas relief at this time).  Accordingly, the undersigned similarly proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated a present right to habeas corpus relief on this basis.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and **DISMISS** this civil action from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendation" is hereby filed, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (making of objections), and then three days (service/mailing), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party and Judge Faber.

The Clerk is directed to file this "Proposed Findings and Recommendation," to mail a copy of the same to Petitioner and to transmit a copy to counsel of record.

September 3, 2021

Dwane L. Tinsley
United States Magistrate Judge